UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ISRAEL QUINTERO MUNOZ, )<br>)<br>)<br>Defendant. )<br>) | NO. 5:21-CR-007-GFVT-MAS |

**REPORT AND RECOMMENDATION**

The issue before the Court is whether a traffic stop was impermissibly extended when a dog sniff was performed during a field sobriety test. Although Defendant's Motion to Suppress argues as much [DE 37], the United States responds that where there was an open container of alcohol in the center console, the stop was not impermissibly extended to conduct both the dog inspection and the field sobriety test [DE 41]. The Court agrees. Based upon the relevant case law and the facts as presented at the evidentiary hearing [DE 53], the Court recommends the District Court deny Defendant's Motion to Suppress.

  **I.**  **RELEVANT FACTUAL BACKGROUND**

On January 11, 2021, Kentucky State Police Troopers Jack Gabriel and Josh Giles were instructed to be on the lookout for a Chevy Equinox travelling on Interstate 75. Sure enough, the Troopers observed a car matching that description traveling on that Interstate with what appeared to be excessively dark tinting on the front windshield. Trooper Gabriel ran the tags through a law enforcement database and discovered the vehicle was registered to the defendant, Israel Quintero

Munoz ("Munoz"). The database confirmed that Munoz did not have a valid driver's license. Trooper Gabriel also observed the vehicle waiver back and forth over the center line. [Transcript of Suppression Hearing at 26]. Based upon these observations and the concern that Munoz was driving without a license, Trooper Gabriel initiated a traffic stop. Trooper Giles pulled his cruiser over behind Trooper Gabriel to assist.

The following events were captured on Trooper Gabriel's cruiser's dash camera. [United States' Ex. 3a].

Trooper Gabriel approached the vehicle and determined that Munoz was, in fact, not driving but in the front passenger seat. Rather, Munoz's codefendant in this case, Luis Angel Santos-Perez ("Santos-Perez"), was the driver. While speaking with Munoz and Santos-Perez, Trooper Gabriel noticed an open Modelo beer can in the vehicle's center console and the odor of alcohol in the vehicle. [Transcript of Suppression Hearing at 25]. Trooper Gabriel asked Munoz and Santos-Perez various questions about their travels that day. Based upon Munoz's answers, Trooper Gabriel believed Munoz to be answering evasively and dishonestly. [Transcript of Suppression Hearing at 31]. Trooper Gabriel testified both men said they had been looking at a car in Cincinnati but struggled to answer certain questions or provide specifics. Trooper Gabriel was also suspicious because it was around 9:00 p.m., which he thought was an odd time to be viewing a vehicle for purchase.

Trooper Gabriel eventually asked both men to exit the vehicle and directed Trooper Giles to conduct a field sobriety test on Santos-Perez. Trooper Gabriel stated he would "run [his] dog around the car" while Trooper Giles conducted the sobriety test. [United States' Ex. 3a, cruiser dash camera footage at 3:35]. Trooper Gabriel retrieved his dog from his cruiser and began to walk the dog around Munoz's vehicle. The dash camera shows the dog jumping up onto the car

near the rear windows. [United States' Ex. 3a, cruiser dash camera footage at 4:38 and 5:05]. Trooper Gabriel testified this certified dog provides an "aggressive alert" that includes jumping in this manner when he detects narcotics. [Transcript of Suppression Hearing at 64]. Trooper Gabriel determined the dog alert provided probable cause to conduct a search of the vehicle. Trooper Gabriel also obtained Munoz's consent for the search.

Upon searching the vehicle, Trooper Gabriel found twenty kilograms of cocaine in the backseat.

## II.   ANALYSIS

The Court will first address the possible extension of the stop. The Court will then turn to the necessity and voluntariness of Munoz's consent.

A.   **EXTENSION OF THE TRAFFIC STOP**

Munoz does not contest there was probable cause to initiate the stop due to the windshield tint and his lack of a valid driver's license. Nor does he contest the qualifications of the dog utilized by law enforcement[1] or that its alert resulted in probable cause to search the car.[2] Instead, Munoz argues that "the original stop in this case, based upon the suspicion was that Mr. Munoz

---

[1] Trooper Gabriel testified to the dog's training and certification. The United States introduced the dog's Kentucky State Police narcotics detection certificate as Exhibit 1 during the hearing. [DE 54]. The Court finds that the dog alert provided sufficient probable cause to search the vehicle.

[2] "If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume that the dog's alert provides probable cause to search." *Florida v. Harris*, 568 U.S. 237, 247 (2013). "So long as 'probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of *every part* of the vehicle and its contents that may conceal the object of the search.'" *Carter v. Parris*, 910 F.3d 835, 840 (2018) (emphasis in original; quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)). To the extent Munoz argued in his motion that the evidence is "insufficiently clear to show that the K9 unit actually alerted to the presence of narcotics in the vehicle," Trooper Gabriel testified at extraordinary length as to how and when his dog alerts, and explained the alerts as seen on the dash camera footage played during his testimony. The Court therefore finds this argument without merit; further, it appears Munoz abandoned the argument at the hearing.

was driving the vehicle, was impermissibly extended to conduct additional investigation[]" because "nothing that occurred during the interactions of Trooper Gabriel with the occupants of the vehicle were sufficient to warrant the extension of the seizure for purposes of conducting a dog sniff around the perimeter of the car." [DE 37 at Page ID # 126-27].

The facts, however, disagree. As seen on the video footage, at the very same instant that the Troopers confirmed Munoz was not illegally operating the vehicle and testing the window tint, the Troopers saw the open container between Munoz and Santos-Perez. From there, the Troopers needed to write the tickets for the tint violation, the open container, and conduct a field sobriety test for Santos-Perez. Trooper Giles, without delay, began conducting the field sobriety test. In the interim, Trooper Gabriel began the dog sniff, exactly four minutes after Munoz's vehicle came to a stop on the side of the road. [United States' Ex. 3a, cruiser dash camera footage at 4:24]. The dog sniff concluded one minute and thirty-eight seconds later. [United States' Ex. 3a, cruiser dash camera footage at 6:02]. And while there is some ambiguity whether the dog sniff was fully completed prior to the conclusion of the field sobriety test, there is no dispute that the Troopers had yet to write the tickets for the aforementioned violations. [*Id*.]. Stated another way, by the time the dog alerted, the traffic stop was mere minutes old and was far from complete. Based upon these undisputed facts, the Court is hard pressed to find there was an extension of the stop for the purposes of conducting the dog sniff.

The law supports this conclusion. "Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to the traffic stop.' Typically, such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 575 U.S. 348, 350-51, (2015) (quoting *Illinois v. Cabelles*, 543 U.S. 405 at 408

4

(2005)). Moreover, "in determining the reasonable duration of a stop, 'it is appropriate to examine whether the police diligently pursued the investigation.'" *Id*. at 1614 (quoting *United States v. Sharpe*, 470 U.S. 675 at 686 (1985)). Here, determining whether the driver was intoxicated when there was an open alcoholic beverage next to him in the vehicle was both an ordinary inquiry in a traffic stop and necessary to protect the public from a potentially impaired driver.

In *Rodriguez v. United States*, the Supreme Court "granted certiorari to resolve . . . the question [of] whether police routinely may extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff." *Rodriguez v. United States*, 575 U.S. 348, 353 (2015). The Court concluded that "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns[.] . . . Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at] purpose.'" *Rodriguez v. United States*, 575 U.S. 348, 354 (2015).

As reflected in *Rodriguez*, the Sixth Circuit has a "bright-line rule that any subsequent prolonging, even de minimis, is an unreasonable extension of an otherwise lawful stop." *United States v. Baxter*, 2018 WL 1598950, at *7 (E.D. Tenn. Mar. 13, 2018) (quoting *United States v. Stepp*, 680 F.3d 651, 661-62 (6th Cir. 2012)). "A court 'must conduct a fact-bound, context-dependent inquiry in each case' to determine whether the 'totality of the circumstances surrounding the stop" indicates that the duration of the stop as a whole . . . was reasonable.'" *Id*. at *6. The stop was extended to conduct a sobriety test—not to conduct a dog sniff. It was simply a matter of opportunity and convenience for Trooper Gabriel to conduct the dog sniff while Trooper Giles tested Santos-Perez for intoxication. The dog sniff amounted to a quick and minimally intrusive investigative tactic calculated to confirm or deny Trooper Gabriel's suspicion

5

that there was something unusual afoot. It ended sixty-eight seconds after the conclusion of the sobriety test. [United States' Ex. 3a, cruiser dash camera footage at 4:56-6:02].

And even if the Court were to conclude the dog sniff was an extension of the stop, the Sixth Circuit has routinely approved brief extensions of traffic stops—far longer than sixty-eight seconds—to for the purpose of conducting a dog sniff. *See United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005) (finding that officers had "reasonable suspicion to detain [a driver] for the additional approximately thirty to forty-five minutes it took for the police to bring the first drug-sniffing dog to the scene and have the dog check the vehicle for the presence of narcotics"); *United States v. Orsolini*, 300 F.3d 724, 730 (6th Cir. 2002) (concluding that the defendant "was not detained for an unreasonable length of time" where officers spent "approximately 35 minutes . . . waiting for a dog unit to arrive[,]" and "[t]he entire investigation thus lasted for less than one hour"); *United States v. Garcia*, 496 F.3d 495, 504 (6th Cir. 2007) ("The officers reasonably suspected the Suburban's occupants of illegal drug trafficking, and the dog narcotics sniff is directly related to investigating this suspicion. Moreover, the duration of the stop was reasonable; the dog sniff was performed within a half hour of the stop[.]").

In the end, Munoz has not offered any authority or facts evincing that a dog sniff commenced within four minutes of stop initiation and concluded prior to the issuance of the violations improperly exceeded the stop's scope and duration. Thus, his motion to suppress the evidence found because of the search that followed the positive dog alert should be denied.

**B.    CONSENT SEARCH**

Munoz also argues that, because English is not his natural language, his consent to search the car was not knowing and voluntary. The United States clarified at the hearing that it was not relying on consent as justification for the search of Munoz's vehicle, but maintained there was consent to search nevertheless. The Court agrees.

Once more, the facts do not square with Munoz's argument. Specifically, while English is not his first language, Munoz was able to converse with Trooper Gabriel about his identification, what he had been doing during the day, what items might be found in his vehicle, and even laugh at Trooper Gabriel's joke about whether the troopers would discover any dead bodies in the vehicle if they looked. [United States' Ex. 3a, cruiser dash camera footage at 2:20-3:11]. Trooper Gabriel asked Munoz, "You said there's nothing illegal in the car? Do you mind if we check?" to which Munoz responded, "no." [United States' Ex. 3a, cruiser dash camera footage at 6:29-33]. Trooper Gabriel then directed Munoz to "walk back there with them" (meaning, walk towards Trooper Giles and Santos-Perez), and Munoz complied with the verbal request, indicating he understood the verbal instruction. [United States' Ex. 3a, cruiser dash camera footage at 6:35]. Finally, prior to searching the vehicle, Trooper Gabriel stated to Trooper Giles in front of Munoz, "he said it's fine if we check, so I'm going to let you all hang out." [United States' Ex. 3a, cruiser dash camera footage at 6:40-50]. Munoz did not respond, protest, or indicate to Santos-Perez or the troopers that he did not understand what was occurring.

The recording of the traffic stop clearly conveys that Munoz understood and communicated with Trooper Gabriel in English for several minutes before and after he consented to the search. Munoz stressed that once he was read his *Miranda* rights in Spanish, he chose not to make any further statements as proof that he did not understand the communications with Trooper Gabriel. This fact, however, does not show that Munoz did not understand English at the time he consented to the search; it simply shows Munoz chose not to make any statements at that time. The Court concludes consent was not required to search the vehicle after the dog alerted to narcotics in the backseat, but to the extent consent is contested as invalid because of a language barrier, the Court finds that the recording of the traffic stop refutes this claim.

7

C. **MOTIONS IN LIMINE**

The United States moved the Court to preclude the defense from questioning Trooper Gabriel about his professional suspension in June 2020 and an excessive force complaint in November 2019. [DE 50 and 51]. Both incidents were unrelated to the traffic stop and search in this case. The Court raised the issue with counsel at a sidebar after Trooper Gabriel's testimony on direct examination during the suppression hearing. Defense counsel stated he did not object to the United States' motions and did not intend to raise the issues of the prior incidents involving Trooper Gabriel at the suppression hearing. Accordingly, the Court recommends the District Court grant the unopposed motions in limine.

### III. CONCLUSION

For reasons stated herein, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Suppress [DE 37] and **GRANT** the Motions in Limine [DE 50 and 51]. The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b)(1), Fed. R. Crim. P. 59(b), and local rule, within **fourteen** days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

Entered this 25th day of June, 2021.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge